Target Training International v. Extended DISC International Mr. Pfeiffer? Yes, ma'am. May it please the Court, I am Justin Pfeiffer of the law firm of Ajami LLP in Houston, Texas. I represent Extended DISC International, which the parties in this case refer to as EDI. There are three reasons fully supported in the record to affirm the district court's judgment. First, jurisdiction is lacking because the patent's original claims were canceled in re-examination. But your friend just told you on that point that what we're looking at here is the complaint, and the complaint still stands. Now, what are these infringement contentions? Are they an addendum to the complaint, or are they separate and distinct from the complaint? The infringement contentions, I mean, the original, this is the Fresenius argument that the original 11 claims, which is what the claims constitute in the patent and suit, have been canceled by the PTO, and that determination was affirmed by this Court. They're not arguing the original claims stand. Their whole theory is based on the new claims that came out of the re-examination. Sure, the patent as a whole. Right. That's right. But still, it has to be restarted. They have to refile again in the district court because the original claims have been canceled. What do they have to refile? I mean, they've got the complaint, and they have to just file amended infringement contentions, right? Correct. They have to file amended, but under the court's case law, under Fresenius, they would have to file it again because… File what again? So is your position that this particular case, I know we've got another one coming, so I've got them confused in my brain, but that this case isn't properly before us? I mean, what's the thing? Yes, that's my contention, that it's moved as to us, and the argument's going to be substantially identical to the argument in the companion case. In this case, have they moved to amend the infringement contentions? They have not. Well, can we get – oh, Judge O'Malley, did you have a question? I think I cut you off. Yeah, I'm just confused because clearly there's an overlap between these two cases. Yes. And so you're saying that the reason there's no specific jurisdiction is because we have to look at the original claims, and the claims are gone, therefore there's nothing to sue you over? That really goes, Your Honor, to the reasonableness problem. It doesn't – it's an additional reason. That's not even an issue for us. Yeah, yeah, right, right. The additional issue is – I mean, I kind of am going to talk more about personal jurisdiction. I just was pointing out that that's an additional reason. Okay, I'm sorry. Then I'll just cut you off before you finish. So should we assume that the personal jurisdiction question is looking at the new claims, or should we assume they're looking at the old claims? Well, Your Honor, it's the time of filing of the controls, the time of filing of the suit is what is being reviewed. But the judge did these things collectively, denied the motion for leave to amend and then denied the personal jurisdiction at the same time. No, there was never a motion for leave to amend in our case. They only – that is in the other case. That would be in Judge Miller's court rather than in Judge Gilmour's court. So what we have here is a – Maybe we'll get some clarity on this point in the next case. I didn't know that there was a motion to amend in either case, frankly. But on the issue of jurisdiction, why is Prong 2 at least not met? It arises – the claim arises – let's leave aside the question of what the claim is. Let's assume the appropriate claim is before us. It arises out of or relates to the defendant's activities within the forum state. Go ahead. But Prong 1 is not met because EDI did not purposely avail themselves of the forum state. But they contracted with the company. Their affidavit says their sole customer in the United States is Aetna. So they contracted with a Texas company. This seems to be a different situation from Burger King. You contract with a Texas company which, perhaps, is alleged to be infringing the patent as a result of things that Aetna – EDI is participating in. Why isn't that sufficient connection with Texas? In such cases, Your Honor, there is a requirement that for an exclusive licensee – and this was not really developed in the briefing because TTI did not make an issue of it – the exclusive licensee line of cases indicate that the crux of the matter is the duty to defend within the license agreement. And there is no against patent infringement suits and against or initiate to defend one's patent. I'm sorry, I don't understand what you're saying. This doesn't have to do with exclusive licensees or anything like that. The EDI is contracted with a Texas company which is intended to be its sole customer in the United States. Correct. And if there were an allegation – I'm not sure there is – but if there were an allegation that Aetna infringed the patent as a result, that would be sufficient for Texas jurisdiction, right? No, Your Honor. I would disagree under – if we look at the Breckenridge case, Breckenridge Pharmaceutical versus Medilab. Exclusive licensees as it relates to the patent holder is a totally different animal. Here, we're not talking about the fact that you have a patent holder that then allows someone else to make a sale. What we have here is we have a manufacturer who not only has this agreement that says you can make all of these sales and you have the right to make these sales, but it has an 11% interest, which even the SEC would find to be meaningful and reportable, and it's an entity that you all describe as your North American presence. I don't understand how this is a situation in which you haven't directed any activities toward the state of Texas. Put aside whether there's an allegation of infringement. But in the franchise agreement, and I'm at the Joint Appendix 73 through 80, Paragraph 7, which is on JA 75, says the franchisee carries alone the responsibilities of its activities. Turning further in the franchise agreement, at Paragraph 11, the franchisee is the one who builds their own marketing organization. Well, you would agree, though, would you not, that every sale that EDI makes to EDNA is a sale to the state of Texas, right? Correct. But that's not a sale to any of any end users. Suppose the allegation were here that EDI contracts with EDNA to conduct infringing activities, and EDNA is located in Texas. That would be sufficient for specific jurisdiction, wouldn't it? I'm sorry, Your Honor, if EDNA was located in Texas. EDNA is located in Texas. Yes. If EDI contracted with EDNA to engage in infringing activity, there would be personal jurisdiction, specific jurisdiction in Texas, would there not? Not if the contract didn't, if there was a duty to defend, a duty to litigate, and cooperation within the agreement. I don't understand what that has to do with it. If you contract with somebody in Texas and ask that person to engage in infringing activity, why doesn't that create specific jurisdiction in Texas? If you're asking them to engage in infringing activities, it would. Okay, so the question is, is there an allegation that EDI has asked EDNA under this contract to engage in infringing activity? Chief Judge Crouse pointed you to the complaint. It's not clear whether there is such an allegation or whether, considering the amended claims here, whether there could be such an activity. Could you address whether EDNA is alleged to be engaged in infringing activity? We would submit that the allegations are not sufficient based on the complaint, based on Mr. Cease's declaration and the declaration of Mr. Sabinan, who's EDI's only employee. Why not? Because you're saying there's no allegation to defend? Yes. But let's assume that this claim, even though it's a method claim, only claims the whole exercise of going back and forth with the customer and that it doesn't actually contain a claim that says the customer has to do anything. So in other words, what you're selling and what is infringing is the access to the website, the receipt of the documentation, and that the claim is thus limited so that you don't have to have a joint infringement. If the claim is limited in that way, isn't that exactly what EDI is selling to EDNA and then authorizing EDNA to also sell? But the action still would be against EDNA, not against EDI. To separate out the formalities, putting these together would disrespect corporate formalities. And the case law and the brief that they cite about control, this level of control does not come anywhere close. But that's not the theory. The theory is not control. It's not piercing the corporate veil. The theory is that you contract with somebody who's located in Texas and ask that person to infringe these methods. That is basically the statement of the theory. And you've agreed that if that's what EDI did, was to ask EDNA to engage in infringing activity under the contract, that that would create personal jurisdiction. So we need to ask whether there is a colorable allegation here in the complaint that EDI asked EDNA to engage in infringing activity. I understand Your Honor's point. I just would indicate that there would not be enough allegations and there would not be enough commonality between the two entities to demonstrate that. Well, do you have any comment on whether the complaint does or does not, in response to Judge Dyke's question, whether the complaint is sufficient, accepting Judge Dyke's premise? Accepting his premise, the complaint is vague on that point. Going through the declarations and the unrebutted declarations of Mr. Sipinan, it also does not shed light on that question. Because it's hard to pin down even what patent claims are at issue. Can I just go back, because someone other than yourself is arguing on the other side, the second case, and I apologize for conflating these two, but they're just conflated in my mind and I can't get around that. If we were to affirm the second case, in other words, where the district court said that the other complaint is, she dismissed as moot in light of the reexamination results, is it your view that the same thing necessarily would happen in this case? Yes. And therefore, even leaving the jurisdictional question aside, it would just be moot? Yes. Yes, that is my position. And that is essentially in the cancellation of the claims causing pending suits to fail has been the rule since the Civil War. I mean, that is a much easier basis upon which to affirm. That is a much cleaner basis to affirm under Fresenius and not have to deal with some of the tricky personal jurisdictional questions. Then do you agree that based on the new claims, they could simply institute new actions against both EDI and EDNA and then they could revisit questions of personal jurisdiction? They could if this court were to find personal jurisdiction in this matter over EDI. Then they could. I think the question is if we were to dismiss this case as moot because the old claims are gone, whether they could institute a new suit and attempt to establish personal jurisdiction in that suit. Yes, they could attempt because there are new claims. They would have to be examined in a new complaint. But they would not be precluded from doing so just simply based on the district court's adjudication here. I mean, we would be here again probably two years from now arguing about personal jurisdiction, but the argument would be new. And it would be based on the claims and based on the complaint perhaps with different claims that maybe would be more specific and showing the jurisdictional nexus because on the records it stands right now, we would submit this insufficient. Thank you. Ma'am, one point on the reasonableness. I just wanted to make the point that EDI only has one full-time employee. It would take him 17 hours to fly from Finland to Houston. There is an eight-hour time difference. And the agreement, the franchise agreement here, has a Finnish choice of law provision, which would make it very difficult for the district court and that any dispute on this matter would be better handled by the courts in Finland. Okay. Thank you. Thank you. Your Honors, I just have a couple quick points. It really seems to me that you're asking us to decide a very difficult jurisdictional issue because you didn't conduct some rather simple discovery which would have established that there were end users of this system or method in Texas. And why is it that you are resisting filing a new complaint and conducting appropriate discovery to establish specific jurisdiction? Why are you going through this? I don't understand. What is the disadvantage of doing that? Sure. The disadvantage, which I can discuss now or later or both, is with respect to our concern, Your Honor, is that there is a potential of claim preclusion. And that if you affirm the EDNA dismissal, we will be in the position of not being able to file any case. And it's not that we necessarily don't need it. And you're basing that on Senhue? Yes. Yes, Your Honor. Now, doesn't Senhue presuppose a dismissal on the merits? As I read Senhue, Your Honor, my understanding was that in that case there was essentially similar facts that they were looking at the decision with respect to substantial identicalness of the claims. They concluded that they were not substantially the same. They were narrower. And therefore, because everything was encompassed, everything in the new claims was encompassed in the old claims, that there was no ability to go back and refile a case against. But that case, I understand your concern about that case, but the concern seems misplaced here. We're talking potentially about a dismissal for want of personal jurisdiction or on grounds of mootness, and neither one of those leads to claim preclusion. I hope that if that's accurate, Your Honor, that's wonderful. Even under Senhue's broad view of claim preclusion, it presupposes a judgment on the merits where the issue was actually litigated. And in this case, Your Honor, so in this case you're saying that because we never got to the substance of whether there was infringement of the first claims, it would not apply in that situation? Well, I'm asking you. My concern is that it does, Your Honor, and that's one of the reasons we're very concerned. Do you disagree that Senhue was a merits dismissal, a dismissal on the merits? I am trying to think back, Your Honor. If you assume it was, then is that not distinguishable from what's going on here? If it was a merits decision and not on just the issue of the amended claims being substantially indistinguishable and set aside for mootness, then I see that there is a distinction. The other issue that we have, though, Your Honor, and the other reason we're against the idea of just going back and filing a new complaint is that this was the eDNA case that's been going on for years. It was literally set to go to trial a week. It was a week from trial when my partner was... That's the other case. Right. But if that case gets dismissed and this case correspondingly gets dismissed, we are in the position of going back and having to prove up jurisdiction, go through the whole discovery process again. The only reason we have any evidence with respect to what their EDI's actions are in this case is based off of this agreement that was disclosed in the other case. Well, you already have that. The reason there was a delay in this case is because there was a re-exam and the claims upon which the complaint was originally based no longer exist. That's kind of a peculiar and a set of circumstances that isn't going to recur. The fact that that requires, therefore, the filing of a new complaint may be unfortunate, but where does that get you? I mean, it's taken a long time, yes, but it's because, large part because the claims have no longer exist, so it necessitates. And you could ask the lower court to incorporate the prior discovery or could you not? We could. We're concerned that what we'd have is a fight from the other side with respect to the ability to just part and parcel, bring everything in, the discovery that had occurred as well as the Markman decision that came down, the summary judgment orders, so that we would be working from where we were as opposed to working from the beginning again. So it's concerned. Well, it seems hard to imagine that a district court would not appreciate the expeditiousness of doing that rather than compelling another three years' worth of cost and expense. All right. Anything else on this issue? Yes, Your Honor. I just want to be clear with respect. Actually, when you're looking at the complaint, I looked back in the appendix, and the appendix for this case, I don't see the complaint in there. I see the complaint for the eDNA case in the eDNA thing, and so I'm just trying to make sure that I. . . I may have gotten it off of PACER, but I've got a complaint. So, I mean, you have a. . . I presume you have a copy of the complaint. You're looking at the EDI complaint, not the eDNA complaint. I don't have that with you. I'm looking at the EDI complaint. I think it is in the appendix there. Your Honor, it's in the supplemental appendix. The supplemental. Okay, thank you. Thank you. But can you tell me where, since we're about to move on to the other case, can you just show. . . Because I right now couldn't find the complaint in the eDNA case, so if you've located it, I can just give you the site for it. Yeah, I'm going to. . . I think it's page one. Oh, well, that would be. . . Yeah. Oh, one. . . It's here. Oh, the supplemental. Yeah. But the supplemental is the EDI, but you think the EDI. . . No, that's the EDI. Oh, that's the EDI. Yeah. Your Honor, it's in the supplemental appendix in the other case, beginning at JA239 in the eDNA case. Thank you. All right, we thank both counsel, and the case is submitted, and we'll move on to the next case, which is. . .